10-0520-cr(L),
10-0615-cr(con)
USA v. Pescatore

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2010

(Submitted: January 3, 2011          Decided: February 23, 2011)

Docket Nos. 10-0520-cr(L), -0615-cr

_____

UNITED STATES OF AMERICA,

Appellee,

- v. -

MICHAEL PESCATORE,

Defendant-Appellant.

_____

Before:  KEARSE, WINTER, and HALL, Circuit Judges.

Appeal from an order of the United States District Court for the Eastern District of New York, Thomas C. Platt, Judge, denying defendant's postconviction motion for an order either compelling the government to use a portion of his forfeited assets to satisfy his restitution obligations, or vacating so much of the judgment of conviction as ordered him to pay restitution in excess of his victims' actual losses.

Affirmed, and remanded for further proceedings.

LORETTA E. LYNCH, United States Attorney for the Eastern District of New York, Brooklyn, New York (Varuni Nelson, Beth P. Schwartz, Kathleen A. Nandan, Assistant United States Attorneys, Karen R. Hennigan, Special Assistant United States Attorney, Brooklyn, New York, of counsel), for Appellee.

JAMES R. FROCCARO, Jr., Port Washington, New York, for Defendant-Appellant.

KEARSE, Circuit Judge:

Defendant Michael Pescatore, who was convicted of operating chop shops in violation of 18 U.S.C. §§ 2322 and 2, and of extortion offenses in violation of 18 U.S.C. §§ 1951 and 2, and who, in his plea agreement with the government, agreed to forfeit $2.5 million in cash, plus certain real estate, and to pay restitution in an amount not less than $3 million, appeals from an order of the United States District Court for the Eastern District of New York, Thomas C. Platt, Judge, denying his postconviction motion for an order either compelling the government to use a portion of his forfeited assets to relieve him of his restitution obligations, a process called "restoration," 18 U.S.C. § 981(e)(6), or vacating as illegal the requirement in the amended judgment of conviction that he pay $3 million in restitution, to the extent that that sum exceeds the total losses suffered by his identified chop shop victims. On appeal, Pescatore contends principally (1) that the government should be compelled to use a portion of the forfeited assets to satisfy his restitution obligations because no law prohibits such restoration; (2) that the judgment ordering him to pay $3 million in restitution is illegal to the extent that the total amount of victim losses listed in the pages of the presentence report ("PSR") that are attached to the amended judgment is less than $3 million; and (3) that his obligation should be further reduced

- 2 -

because the actual amount of victim losses totals even less than the amount shown in the PSR. In opposition, the government argues (1) that the decision whether to grant Pescatore relief in the form of restoration lay solely within the Attorney General's discretion, which was not abused; (2) that the amended judgment of conviction reduced Pescatore's restitution obligation to $2,559,611.79 to match the losses identified in the PSR; and (3) that any contention that the $2,559,611.79 figure is erroneous is subject to plain-error analysis and does not meet that standard.

For the reasons that follow, we conclude that the district court did not err in rejecting Pescatore's restoration request; that the amended judgment did not reduce the $3 million amount that Pescatore was ordered to pay in restitution; and that Pescatore is not entitled to an immediate--if any--order excusing him from paying that amount. The amount to be paid is limited to the restitution amounts needed to make Pescatore's victims whole, plus interest that Pescatore is obligated to pay on the properly ordered restitution amounts that he has not timely paid, see 18 U.S.C. § 3612(f)(1), plus any penalties to which he may be subject for unpaid restitution amounts as to which he is or was delinquent and/or in default, see id. §§ 3612(g), 3572(h)-(i). If all required payments of restitution, interest, and restitution-related penalties total less than $3 million, Pescatore will be entitled to a refund of the remainder. Accordingly, we affirm the denial of Pescatore's motion but remand for further proceedings.

I. BACKGROUND

To the extent relevant to the present case, Pescatore was first arrested, by law enforcement officers of Suffolk County, New York, in mid-2003. He and others, including Astra Motor Cars, Inc. ("Astra"), of which Pescatore was president and 50-percent owner, were indicted by a New York State grand jury on charges of fraud and enterprise corruption in violation of New York State law; Astra was also indicted on state-law charges of money laundering. In late 2003, the United States commenced an in rem civil action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 21 U.S.C. §§ 881(a)(6) and (7) (the "civil forfeiture action") against several properties owned in whole or in part, directly or indirectly, by Pescatore, including one property leased to Astra. The complaint in that action alleged, inter alia, that Astra had engaged in illegal trafficking in stolen vehicles and stolen vehicle parts and had defrauded customers. (See United States v. 322 Richardson Street, No. 2:03-cv-6456-TCP (E.D.N.Y. filed Dec. 24, 2003) ("Forfeiture Complaint" or "complaint") ¶¶ 21-23, 56-93.) It also alleged that Astra sold to a narcotics trafficking organization specially-ordered vehicles that could accommodate hidden compartments; that Astra accepted large sums of cash from that organization; and that Astra's other owner, Sanford Edmonston, knew that the buyers were drug dealers and that the cash was proceeds of narcotics trafficking. (See id. ¶¶ 19-20, 94-99.) The complaint sought forfeiture of the defendant

properties on the ground that they were derived from proceeds traceable to "specified unlawful activity" within the meaning of 18 U.S.C. § 1956(c)(7), including the activities alleged in the complaint. (Forfeiture Complaint ¶¶ 100-62, 173-75.)

Pescatore, Astra, and numerous others were indicted by a federal grand jury in 2004. An 84-count second superseding indictment (the "Chop Shop Indictment")--alleging, inter alia, operation of chop shops in violation of 18 U.S.C. § 2322, alteration or removal of motor vehicle identification numbers in violation of id. § 511, mail fraud in violation of id. § 1341, conspiracy to defraud the United States in violation of id. § 371, and money laundering in violation of id. § 1956--named Pescatore in most of the counts.

In February 2005, Pescatore was also charged, in six counts of a new federal indictment, with extorting money from a number of individuals. In February 2006, the extortion case was tried, and Pescatore was convicted on three of the six counts.

A. The Plea Agreement and the Judgment of Conviction

In March 2006, pursuant to a plea agreement dated March 9, 2006 (the "Plea Agreement" or "Agreement"), Pescatore pleaded guilty to one count of the Chop Shop Indictment (count 22), which charged him with owning, operating, maintaining, or controlling a chop shop, in violation of 18 U.S.C. § 2322. Pescatore admitted that, in that operation from March 1987 through June 14, 2004, he "engaged in receiving stolen motor vehicle parts" that were used

- 5 -

"to rebuild damaged motor vehicles" (Plea Hearing Transcript, March 9, 2006 ("Plea Tr."), at 19-20) and hired employees to take apart, rebuild, and sell such vehicles (id. at 21). The scheme also involved, inter alia, altering and removing vehicle identification numbers so that stolen cars could be sold to unwitting customers. (See id. at 22).

The Plea Agreement was designed to settle not only the Chop Shop Indictment charges but also the civil forfeiture action and the punishment to be imposed for the three counts on which Pescatore was convicted in the extortion case. The advisory-Guidelines-recommended range of imprisonment for his chop shop and extortion offenses was 188-235 months. In the Agreement, the government agreed to drop the remaining 50-odd counts alleged against Pescatore in the Chop Shop Indictment and agreed that an appropriate total prison term for the chop shop offense and the extortion offenses would be 132 months. (See Plea Agreement ¶¶ 4-5, 7.)

In addition to agreeing to plead guilty to count 22 of the Chop Shop Indictment, Pescatore agreed to, inter alia, pay restitution of "no less than $3 million":

> The count [to which Pescatore agreed to plead guilty] carries the following statutory penalties:
>
> . . . .
>
> e. Restitution: In an amount to be determined by the Court, but no less than $3 million. The parties agree that restitution with respect to the defendant's tax liabilities may be ordered by the Court (18 U.S.C. §§ 3663 and 3663A).

- 6 -

(Plea Agreement ¶ 1.e.). The final sentence of this provision applied to Pescatore's federal tax liabilities but became moot, as Pescatore paid that debt prior to being sentenced.

In settlement of the civil forfeiture action, Pescatore agreed to forfeit $2.5 million in cash, plus real estate (see id. ¶ 9). With respect to the assets to be forfeited, the United States Attorney's Office for the Eastern District of New York ("USAO" or "Office") agreed to recommend that the Department of Justice ("DOJ" or "Department") grant restoration, relieving Pescatore of all or part of his restitution obligation:

> The Office will recommend that any net proceeds derived from the sale of the Forfeited Assets be made available to eligible victims, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. Pt. 9 and Attorney General Order No. 2088-97 (June 14, 1997), it being understood that the Office has authority only to recommend and that the final decision whether to grant such relief rests with the Department of Justice, which will make its decision in accordance with applicable law.

(Id. ¶ 17.)

Pescatore was sentenced some 2½ years after his March 2006 plea of guilty. At the October 24, 2008 sentencing hearing, Pescatore informed the court that, in the interim, he had timely turned over many millions of dollars in assets (worth $9 million, see Hearing Transcript, January 29, 2010, at 17, 18) in complete satisfaction of his forfeiture obligations, and he urged the district court to impose a prison term of no more than 132 months in accordance with the Plea Agreement.

MR. STAMBOULIDIS [Pescatore's then-counsel]:

. . . .

- 7 -

We had entered an agreement with the government that's documented in that written plea agreement. We stand here with the government with little if any disagreement as to what should happen here today. As we indicated to the court in the plea agreement, and at the time of the plea the parties, the government and Mr. Pescatore, are asking for a concurrent sentence on both matters.

. . . .

. . . . We obviously are here to ask for the court's--to honor and accept the plea, which I believe you indicated in words or substance that you have no problem with, but obviously now that you have the benefit of a presentence report and much more information than you had then to make up your mind.

(Sentencing Transcript, October 24, 2008 ("Sentencing Tr."), at 3-4.)

The court indicated that it was prepared to sentence Pescatore to, inter alia, 132 months' imprisonment in accordance with the Plea Agreement, but it expressed concern that discussion in the PSR "about 180 months in custody as the agreed upon amounts" (id. at 11) could prove confusing to the Bureau of Prisons. Pescatore and the Assistant United States Attorney ("AUSA") agreed that it would be appropriate that the PSR be amended to match the Plea Agreement. (See id. at 12-14.) The record does not indicate that any other objection had been made to the PSR.

With regard to restitution, the government asked the court to order payment of $3 million in accordance with the Plea Agreement, and Pescatore reminded the court that the USAO had agreed to recommend restoration:

[AUSA] GATZ: . . . .

- 8 -

I just ask the court to enter a restitution amount in the amount of $3 million as per the plea agreement, and the government does stand by its agreement to recommend concurrent sentences on both of the matters.

. . . .

MR. STAMBOULIDIS: With respect to Mr. Pescatore being ordered to pay any more money, . . . .

I just want to remind the court this man paid millions of dollars in forfeiture, agreed-upon forfeiture, ahead of schedule in many instances, as I indicated, and we had an understanding and I would ask the court to keep that in mind when it orders restitution that the forfeited moneys, the US Attorney's Office was going to make a recommendation to whoever the people are in Washington, main justice or whoever they are called, the people in Washington consider applying any forfeiture money he already paid in, including giving over his house and millions of dollars on top of that, to be applied to any restitution.

THE COURT: If it's within the parameters.

I think they would regard it as supplement, any amount ordered here of the $3 million forfeiture [sic], which the government is seeking. I don't think they have to take it into account what's been paid heretofore.

I may be wrong, Mr. Stamboulidis, but I think that's right.

MR. STAMBOULIDIS: They don't have to, but they should and, I think, in many cases they do.

MS. GATZ: Your Honor, as per the agreement the government negotiated it and we will stand by it. We will recommend that the $3 million restitution be taken from the prior forfeiture.

However, I told Mr. Stamboulidis and the defendant is aware, we cannot require them to do that. We make the recommendation and they consider that.

(Sentencing Tr. 14-16.) The government asked the court to order that the $3 million in restitution "be paid in full by the close

- 9 -

of the year 2009" (id. at 21), a delay of some 14 months in light of the restoration recommendation to be made by the USAO to the DOJ. Pescatore asked that the due date for payment be delayed for at least three years rather than 14 months, so that he could receive credit for restitution payments that would be made by codefendants in the interim. (See id. at 21-24.) The government opposed that request, stating that Pescatore's victims had been "calling . . . for the past five years asking for their restitution." (Id. at 23.) The court granted the government's request and ordered that the restitution be paid on or before December 31, 2009. (See id. at 23-24.)

A judgment was entered sentencing Pescatore in accordance with the Plea Agreement. It ordered, inter alia, that "$3,000,000.00" in "restitution should be paid in full by the close of the year 2009." Judgment dated November 1, 2008, at 4, 5. The restitution order did not state, or otherwise incorporate, the names of the victims to whom restitution was to be made or the amount of loss sustained by each victim.

In January 2009, the government asked the court to correct the judgment pursuant to Fed. R. Crim. P. 36,

> in order to expressly incorporate the Pre-Sentence Report ("PSR") dated February 21, 2008, at pages 23-46 and 58-60, which identifies the victims and the actual losses incurred by each victim as a result of said schemes. The reason for this is, in order for the Asset Forfeiture and Money Laundering Section of the Department of Justice to process the restoration request submitted by this office pursuant to the applicable regulations, the judgment must specifically identify the victims. In that it was the parties' and the Court's intention that the victims identified in the PSR be included in the

- 10 -

judgment, the government respectfully submits that the failure to do so was a clerical error which may be corrected at any time.

(Letter from AUSA Kathleen Nandan to Judge Platt dated January 28, 2009 ("Government's January 2009 Letter"), at 1-2.) On January 30, 2009, the district court, noting the absence of any objection, granted the government's request by endorsement. (The judgment with PSR pages appended is hereinafter referred to as the "Judgment" or "amended Judgment"; the appended PSR pages are hereinafter referred to as the "Loss Chart" or "PSR Loss Chart".)

B. Pescatore's Motion To Compel Restoration or To Vacate and Modify the Restitution Requirement

In April 2009, AUSA Nandan notified Pescatore that the DOJ had denied the restoration request. Pescatore was subsequently informed that Nandan could not disclose the reason for the denial because the Department considered the details of its response to the USAO to be privileged.

In late October and early November 2009, Pescatore, represented by new counsel citing Santobello v. New York, 404 U.S. 257 (1971), moved in the district court for an order compelling restoration as "specific performance" of ¶ 17 of the Plea Agreement, and, alternatively, sought a writ of coram nobis declaring ¶ 1.e. of the Agreement unenforceable as a matter of public policy to the extent that $3 million exceeds the total losses of Pescatore's chop shop victims ("restoration/restitution motion"). In support of restoration, Pescatore pointed out that the Plea Agreement stated that the DOJ would make its decision in

- 11 -

accordance with applicable law, and he argued that it should be compelled to apply a portion of his forfeited assets to satisfy his restitution obligation because no law forbade it to do so. The government responded that there had been no breach of the Plea Agreement by the government. The AUSA stated that the USAO had fulfilled its promise to recommend restoration (see Motion Hearing Transcript, January 29, 2010 ("Motion Tr."), at 18 ("We made a recommendation to the Department of Justice"; "we made the recommendation, we made the request")); that "[t]he request was denied because the defendant actually does have assets" (id.); and that DOJ's decision to deny restoration "is not reviewable in a court of law" (id.).

In support of his request for modification of the restitution order, Pescatore pointed out that the purpose of restitution is not punishment, but compensation of victims, and that the losses listed in the PSR Loss Chart attached to the Judgment totaled less than $3 million. He also argued that in reality the total amount of victims' losses was even less than the total indicated by the Loss Chart. He asked that the Plea Agreement be voided and that the restitution amount be recalculated to reflect the actual losses suffered by his victims.

The government, in opposition to Pescatore's request for a reduction of his restitution obligation, stated, inter alia, that

> [t]he Court's order of mandatory restitution in the amount of $3 million is consistent with the Mandatory Victim[s] Restitution Act . . . and is the **minimum amount** agreed to in the plea agreement . . . . The plea agreement states that restitution shall be "in an amount to be determined by the Court, but no less

- 12 -

than $3 million." . . . . The Court properly considered the loss sustained by each victim as a result of the defendant's offenses, and properly incorporated the analysis set forth by the Pre-sentence Report.

The defendant pled guilty, and was sentenced pursuant to an agreement with the government wherein restitution of at least $3 million was agreed upon. The defendant was represented by counsel at sentencing who provided argument relative to restitution. The Court properly considered all relevant matters and ordered restitution in the lowest agreed upon amount.

(Letter from Special AUSA Karen R. Hennigan to Judge Platt dated December 30, 2009 ("Government's December 2009 Letter"), at 2-3 (emphasis in original).)

At the January 29, 2010 hearing on Pescatore's motion, the colloquy with respect to restitution included the following:

MR. FROCCARO [Pescatore's new attorney]: . . . .

Your Honor, and this is in no way, shape, or form a reflection on your Honor, but in the parties' plea agreement there was an agreement that he would pay no less than $3 million in restitution.

When he was sentenced, there was no probation list attached identifying the victims and the amounts of the losses.

. . . .

. . . . You went in accordance with the agreement, judge, with the understanding that there would be in actuality at least $3 million in losses.

THE COURT: What?

MR. FROCCARO: That there would be at least $3 million in actual losses to the victims.

THE COURT: Was that raised at the sentencing time?

- 13 -

MR. FROCCARO: You know, Judge, the lawyers didn't raise it. And I cited in my papers to your Honor that it is plain error that the lawyers--

THE COURT: Whoa! Did anybody say to the court at the date of sentence that the $3 million figure which was mentioned, I guess I ordered it[] be paid by December 31, that that was in error?

MR. FROCCARO: They didn't. And that was their mistake, Judge. And that constitutes plain error under Second Circuit case law.

(Motion Tr. 4-5.)

Froccaro argued that the victims' losses totaled "at least $1.2 million less than what your Honor ordered" (id. at 5); and although saying that he was unable to state a "definite figure" (id. at 6), he said, "Judge, this loss is on the PSR for 1.8" (id. at 18); "Judge, I took a calculator out, I added up the loss amount in the PSR, and it added up to 1.8" (id. at 22; but see id. at 21 ("I never agreed to the $1.8 million, your Honor.")). Froccaro acknowledged that Pescatore had not appealed to challenge the $3 million amount. (See id. at 6.)

The government, represented at the hearing by AUSAs Hennigan and Gatz, appeared to take divergent positions on whether the $3 million amount was proper. Hennigan pointed out that "there is a plea agreement wherein the defendant got the benefit of a bargain, got the benefit of an agreement that required him to pay $3 million as of the 31st of December 2009, which was passed" (id. at 9); but she also stated that, from the numbers in "the presentence report that was incorporated into the sentence" (id. at 10), she calculated the victims' losses "to be about $2.7 million" (id. at 11); and she said that "[i]n the event that

there is ever some overpayment, the government would certainly consider that" (id. at 9).

AUSA Gatz took the position that Pescatore should be bound by the Judgment, based on his express agreement to pay restitution of not less than $3 million:

> Your Honor, I just want to remind the court that the defendant agreed to pay $3 million, in the plea agreement. He said before the court I will pay $3 million and no less in restitution. And your Honor ordered that. And we are done with the J&C. It was filed probably almost a year ago.

> So this satellite litigation is improper, frankly, as a whole because the defendant agreed to the $3 million in the plea agreement.

(Motion Tr. 14.)

The court ultimately rejected all of Pescatore's arguments. Having requested in vain that Pescatore provide "specifics" (id. at 8) and "proof" (id. at 12) as to the contention that his victims' losses totaled no more than $1.8 million, the court found that that contention was not substantiated, "not on the representations you made here today, which [are] solely an effort to get more time" (id. at 22). Further noting that, of the amount he did not dispute, Pescatore "ha[d]n't even produced a dollar in good faith" (id. at 28), the court stated that Pescatore should at least pay the undisputed amount immediately (see id. at 27 ("Pay what you say you owe."); id. at 22 ("Pay them the 1.8.").) And although noting that compliance with the Judgment was already nearly 30 days overdue, the court gave Pescatore a new 30-day period within which to pay the $3 million ordered in the Judgment; the court denied

Pescatore's request for a longer period and stated that after 30 days the government should begin to levy on Pescatore's property. (See id. at 20-24.)

> MS. HENNIGAN: Your Honor, are you ordering that the defendant pay the $3 million within the next 30 days? . . . .
>
> THE COURT: 3 million bucks.
>
> . . . .
>
> . . . . Wasn't my order for $3 million?
>
> MS. HENNIGAN: Yes.
>
> MS. GATZ: Yes.
>
> THE COURT: That is the judgment.
>
> MS. HENNIGAN: Yes.
>
> MS. GATZ: Yes.
>
> THE COURT: Enforce it.

(Motion Tr. 21-22.)

> MS. GATZ: Your Honor, at this point you are not setting aside the J&C, which requires the defendant to pay the $3 million. You are not setting aside the J&C, the judgment and conviction, which requires the defendant to pay the $3 million. You are not setting that aside at this point.
>
> THE COURT: No.

(Id. at 24-25.)

> MS. HENNIGAN: . . . [Y]our Honor, for clarification. Your Honor is suggesting that [Pescatore] pay what he does not dispute, but you are holding him accountable for the $3 million.
>
> THE COURT: Yes, I am.

(Id. at 27.)

This appeal followed. The new 30-day period granted by the district court ended on March 1, 2010. On March 3, Pescatore moved in this Court for a stay of his restitution obligation. That motion was denied on March 5.

## II. DISCUSSION

On appeal, Pescatore pursues his contentions (1) that restoration, to relieve him of his restitution obligation, was required because no law prohibited the DOJ from granting him that relief; and (2) that, as the purpose of restitution is compensation, the Judgment ordering him to pay $3 million in restitution is illegal to the extent that that amount (a) exceeds the total of his victims' losses as shown by the PSR Loss Chart and (b) exceeds an actual--albeit unspecified--loss total that he alleges is lower than that shown by the PSR. For the reasons that follow, we find no merit in the restoration contention. With respect to restitution, Pescatore is of course correct that its purpose is to compensate victims; however, as Pescatore did not timely challenge the Judgment and, without obtaining a stay, failed to comply with the Judgment, we conclude that he is not entitled to immediate relief from the order to pay $3 million, as it is not clear that that sum will exceed the total of (a) the losses suffered by his chop shop victims, (b) the statutory interest to which his victims are entitled because of his delay in making payment, and (c) the statutory penalties that may be

applicable on account of that delay. Further proceedings in the district court will be required, after Pescatore has paid $3 million, to determine whether he is entitled to any refund.

A. Restoration

Civil forfeiture actions such as that commenced by the government against Pescatore in 2003 and settled pursuant to the Plea Agreement are governed by 18 U.S.C. § 981. That section "subject[s] to forfeiture to the United States" property that was involved in, inter alia, various offenses under Title 18, including money laundering in violation of § 1956 and altering or removing motor vehicle identification numbers in violation of § 511. 18 U.S.C. §§ 981(a)(1)(A) and (F)(i). To the extent pertinent to the present appeal, § 981(e) provides that

> [n]otwithstanding any other provision of the law, . . . the Attorney General . . . is authorized to retain property forfeited pursuant to this section, or to transfer such property on such terms and conditions as he may determine--
>
>     . . . .
>
>     (6) as restoration to any victim of the offense giving rise to the forfeiture . . . .

18 U.S.C. § 981(e)(6) (emphases added). Thus, the Attorney General is allowed to choose between restoration and retention. Pescatore has not called to our attention, and we are not aware of, any provision in this or any other section that requires the Attorney General to choose either option over the other. The authorization either "to retain . . . or to transfer," with no

accompanying statutory constraints, makes the decision between the two choices a matter of discretion.

Nor does anything in the Plea Agreement, which we interpret in accordance with traditional principles of contract law, see generally United States v. Brumer, 528 F.3d 157, 158 (2d Cir. 2008), purport to place any constraints on the Attorney General's exercise of that discretion. Paragraph 17 of the Agreement obligated the USAO to "recommend" that the DOJ grant Pescatore relief in the form of restoration, and Pescatore has provided no reason to discredit the government's representation to the district court that the Office made the promised recommendation. The Agreement further stated expressly that the USAO "ha[d] authority only to recommend and that the final decision whether to grant such relief rest[ed] with the Department" (Plea Agreement ¶ 17), and Pescatore concedes that this called on the DOJ to "exercise its discretion" (Pescatore brief on appeal at 12). The promise that the Department would "make its decision in accordance with applicable law" (Plea Agreement ¶ 17) is not, as Pescatore would have it (see, e.g., Pescatore brief on appeal at 4, 9, 10, 12, 14, ), the equivalent of a promise to grant restoration so long as it is not prohibited. The unambiguous statement that the Department, upon receiving the recommendation, would make its decision "in accordance with applicable law" plainly means that the Department would do anything the law requires and nothing the law prohibits. The Plea

Agreement contains no promise that the DOJ would exercise its discretion to grant Pescatore relief that was not required.

To the extent that the government suggests here, as it argued in the district court, that the decision of the DOJ to deny restoration "is not reviewable in a court of law" (Motion Tr. 18), we need not address that issue, given that the government has explained the basis for the DOJ's decision, and the record cannot support a conclusion that that basis evinced any abuse of discretion. Forfeiture and restitution are separate remedies with different purposes, and the DOJ Manual dealing with forfeitures and with compensation for crime victims indicates that discretion may be exercised to transfer forfeited assets to victims "where . . . other property is not available to satisfy the order of restitution" (Appendix to Government brief on appeal (United States Department of Justice, Asset Forfeiture Policy Manual 164 (2010))). At the hearing on Pescatore's restoration/restitution motion, the government explained that Pescatore's restoration "request was denied because the defendant actually does have assets" (Motion Tr. 18; see also Government brief on appeal at 16), and Pescatore in no way suggested that he lacked the wherewithal to satisfy his restitution obligations (see Motion Tr. 16 (Mr. Froccaro: "I have never said he doesn't have assets").) Accordingly, the criteria for restoration set out in the DOJ Manual were not met.

In sum, we see nothing in the statutory provisions, DOJ's normal operating procedures, or the Plea Agreement that required

the Department to use the forfeited assets to relieve Pescatore of his restitution obligations, and the record shows no failure on the part of the government to consider his request in good faith. The district court properly denied Pescatore's motion to compel the government to grant restoration.

B. Restitution

The Mandatory Victims Restitution Act ("MVRA"), codified largely at 18 U.S.C. §§ 3663A and 3664, provides, in part, that in sentencing a defendant convicted of a felony "offense against property under" Title 18, "including any offense committed by fraud or deceit," the court "shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(ii). "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." Id. § 3664(f)(1)(A).

The purpose of restitution is to compensate victims for their losses. See, e.q., Huqhey v. United States, 495 U.S. 411, 416 (1990), superseded by statute, Crime Control Act of 1990, Pub. L. No. 101-647 § 2509, 104 Stat. 4789, 4863 (codified at 18 U.S.C. § 3663(a)(3)); United States v. Boccaqna, 450 F.3d 107, 115 (2d Cir. 2006) ("Boccaqna"); United States v. Reifler, 446 F.3d 65,

137 (2d Cir. 2006) ("Reifler"); United States v. Nucci, 364 F.3d 419, 423-24 (2d Cir. 2004) ("Nucci").

> In determining the appropriate measure of value for property relevant to restitution, a district court must consider that the purpose of restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury. See Hughey v. United States, 495 U.S. 411, 416, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (observing that the "meaning of 'restitution' is restoring someone to a position he occupied before a particular event"); United States v. Coriaty, 300 F.3d 244, 253 (2d Cir.2002) (holding that "statutory focus" of the MVRA is "upon making victims whole"). Because the MVRA mandates that restitution be ordered to crime victims for the "full amount" of losses caused by a defendant's criminal conduct, see 18 U.S.C. § 3664(f)(1)(A); United States v. Reifler, 446 F.3d at 134 . . ., it can fairly be said that the "primary and overarching" purpose of the MVRA "is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." United States v. Simmonds, 235 F.3d [826, 831 (3d Cir. 2000)].

Boccagna, 450 F.3d at 115. Section 3663A does not authorize the court to order restitution to victims in excess of their losses. See, e.g., Reifler, 446 F.3d at 122-35; Boccagna, 450 F.3d at 109; Nucci, 364 F.3d at 423-24. And as "'[f]ederal courts have no inherent power to order restitution'" but only "'[s]uch authority [as is] conferred by Congress' through statute," United States v. Gottesman, 122 F.3d 150, 151 (2d Cir. 1997) (quoting United States v. Helmsley, 941 F.2d 71, 101 (2d Cir. 1991) (emphasis ours)), the court has no authority under the MVRA to adopt or enforce an agreement calling for restitution in excess of that authorized by statute.

The chop shop offense of which Pescatore was convicted was plainly an offense "against property" and was "committed by fraud or deceit" within the meaning of 18 U.S.C. § 3663A(c)(1)(A)(ii). His operations involved, inter alia, receiving stolen car parts and using those parts to rebuild damaged motor vehicles, and transferring stolen cars to other individuals for replacement of the vehicle identification numbers with false numbers so that the cars could be sold to unwitting customers. (See Plea Tr. 19-22.) Thus, the MVRA was applicable and required the district court to order that Pescatore pay restitution to each identified victim of his offense in the full amount of the victim's losses. The court was not authorized to require restitution in excess of those losses.

Pescatore does not dispute the applicability of the MVRA; his contention is that the Plea Agreement and the Judgment are illegal because they require him to pay restitution in excess of his victims' losses. The government, for its part, does not contend on this appeal that it was permissible for the court to order restitution in excess of the victims' losses. Instead, its brief on appeal suggests that the amended Judgment against Pescatore in fact reduced the restitution order to $2,559,611.79:

> [a]lthough Pescatore challenges the $3 million figure to which he agreed, the fact is that the judgment was amended to incorporate the portion of the PSR identifying the victims of Pescatore's crimes and their actual losses, which total $2,559,611.79. . . .
>
> . . . .

- 23 -

. . . . The judgment against him already has been amended to incorporate the victim and loss information from the PSR, <u>making his restitution obligation no more than the actual losses</u> suffered by his victims of his crimes.

(Government's brief on appeal at 18, 20 (emphasis added).)

We disagree with the government's characterization of the Judgment. However, given the posture of the case, we also disagree with Pescatore's contention that he should immediately be relieved of the requirement that he pay $3 million in connection with his restitution obligations.

1. The Amount Ordered in the Judgment

Despite the government's contention on appeal that the amended Judgment requires Pescatore to pay no more in restitution than $2,559,611.79, nothing in the record--pertinent parts of which are quoted in Part I.B. above--supports that contention. To begin with, the record does not include any document ordering Pescatore to pay any amount other than $3,000,000 or any order or opinion stating that the $3 million amount originally ordered has been reduced. Further, the government's letter to the district court, requesting that the original judgment be "corrected," did not ask the court to change the restitution ordered to a sum other than $3 million; it asked only that the court amend the judgment by attaching the PSR pages that identified the victims and itemized their losses--and it stated that the reason for the request was that the DOJ required that the judgment specifically identify the victims in order "to process the restoration

request." (Government's January 2009 Letter at 1.). Nothing in that letter stated that $3 million was the wrong amount. Nor was a lesser total amount immediately apparent from the proffered PSR pages. While the Loss Chart detailed the losses suffered by each of 80 victims, it did not state a total. From the government's submission, the district court might easily have inferred that the Loss Chart supported the entire already-ordered $3 million. Indeed, the Government's January 2009 Letter described the requested amendment as a "clerical" correction (id. at 2), hardly a term that is applicable to an undiscussed reduction of a liability by nearly half a million dollars. In sum, neither the letter nor the attached PSR pages alerted the court that the Judgment as thus augmented might be viewed as reducing Pescatore's restitution obligation from $3 million to $2,559,611.79.

Moreover, such a view was nowhere evident in the government's opposition to Pescatore's November 2009 request to have the ordered $3 million reduced to match the amount of his victims' losses. The government's preargument letter to the district court stated, inter alia, that "[t]he Court's order of mandatory restitution in the amount of $3 million is consistent with the Mandatory Victim[s] Restitution Act." (Government's December 2009 Letter at 2.) The letter contained no reference to $2,559,611.79. Nor at oral argument was there any mention of that number. AUSA Hennigan stated that based on the PSR pages incorporated in the Judgment, she calculated the victims' losses "to be about $2.7 million" (Motion Tr. 11); but that statement

apparently was not meant to suggest that any less than $3 million was ordered in the Judgment, for she had referred to the possibility that there might be an "overpayment" (id. at 9), and when the court asked whether the Judgment ordered payment of $3 million, Hennigan answered affirmatively (id. at 21). AUSA Gatz echoed that affirmative answer (see id.); and she argued unequivocally that Pescatore had "agreed to pay $3 million" in restitution "and no less," that the court had "ordered" that amount in the "J&C," and that Pescatore's attempt to have that amount reduced was "improper" (id. at 14).

Finally, as revealed by the colloquy described in Part I.B. above, the district court itself plainly did not believe it had amended the judgment to reduce the restitution amount below $3 million. (See, e.g., id. at 21 (The Court: "Wasn't my order for $3 million? . . . . That is the judgment.").)

The record thus in no way supports the government's new contention that, because the judgment was amended to append the PSR Loss Chart listing Pescatore's victims and their losses, that "clerical" step reduced Pescatore's restitution obligation to $2,559,611.79. The Judgment orders Pescatore to pay restitution of $3 million.

The government's present acknowledgement that, as revealed by the pertinent PSR pages, "[a]ll the losses sustained by the victims of crimes in which Pescatore was involved add up to $2,559,611.79" (Government brief on appeal at 17 (footnote omitted)) means that those losses total some $440,000 less than

the Judgment orders Pescatore to pay. Pescatore contends that the discrepancy is even greater, arguing that the actual losses listed in the PSR Loss Chart total "<u>at least $1 million less</u>" than $3 million. (Pescatore brief on appeal at 8 (emphasis in original).) We address these two discrepancies--the first actual, the second alleged--in reverse order.

2. <u>Pescatore's Challenge to the Accuracy of the PSR's $2,559,611.79 Loss Total</u>

As indicated above, 18 U.S.C. § 3664(f)(1)(A) required that the amount of each victim's loss be determined by the district court and included in the restitution order. Although the original judgment entered in November 2008 did not comply with this requirement, the amended Judgment appended the PSR Loss Chart that identified 80 chop shop victims in whose losses Pescatore was involved; those pages showed the precise amount of each victim's loss. Although the Loss Chart did not state an overall total of those items, the total is $2,559,611.79. Pescatore contends that the actual total amount of his victims' losses is less.

Pescatore had received the February 21, 2008 PSR well in advance of his sentencing hearing on October 24, 2008. The record does not indicate that in connection with sentencing he made any objection whatever to the PSR's specification of victims or losses, or to the total loss figure--$2,559,611.79--that was in fact stated elsewhere in the PSR. Further, in January 2009, when the government asked the court to amend the original judgment by appending specific pages of the PSR, Pescatore made no objection:

- 27 -

He did not suggest that any individual or entity identified in those pages was not a victim in whose loss he was involved; he did not suggest that any loss amount shown on those pages was incorrect; he did not suggest that the loss amounts listed totaled less than $2,559,611.79. And when the amended Judgment was entered, Pescatore did not appeal.

Pescatore's contention that his victims' losses total less than $2,559,611.79 was not advanced until he made his restoration/restitution motion, some nine months after the amended Judgment was filed. Given the lack of any timely objection to the correctness of the PSR Loss Chart's listing of Pescatore's individual victims, showing losses that total $2,559,611.79, Pescatore's contention that the Judgment is inaccurate because the appended PSR Loss Chart is inaccurate is reviewable only for plain error. See Fed. R. Crim. P. 52(b); United States v. Catoggio, 326 F.3d 323, 326 (2d Cir. 2003); United States v. Coriaty, 300 F.3d 244, 252 (2d Cir. 2002); United States v. Kinlock, 174 F.3d 297, 299 (2d Cir. 1999).

Under the standard set by the Supreme Court for the application of Rule 52(b), before an appellate court is allowed to correct an error that was not timely raised in the district court four conditions must be met. "[T]here must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights'"; and "[i]f all three" of those "conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness,

integrity, or public reputation of judicial proceedings.'" Johnson v. United States, 520 U.S. 461, 467 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)) (other internal quotation marks omitted).

Pescatore's contention that the actual losses suffered by his chop shop victims are less than the $2,559,611.79 detailed in the PSR Loss Chart that was made part of the Judgment does not meet even the first threshold condition of the plain-error test. His restoration/restitution motion asserted that "the aggregate amount of loss or restitution to the victims identified in the PSR is more than $1 million lower than Mr. Pescatore was ordered by the Court to pay" (Memorandum of Law in Support of Defendant Michael Pescatore's Santobello Motions at 7 (emphasis in original)), but it proffered no facts to support that assertion. The motion did not challenge the PSR's identification of any particular victim; and it did not challenge the amount of any specific PSR-itemized loss. Rather, it claimed that that lower amount was revealed by "[s]imple arithmetic" (id. at 7 n.5). Yet the motion did not proffer a precise amount by which Pescatore contended the PSR was in error. Nor was a precise figure--or any evidence--proffered at oral argument of the motion, despite the court's request for "proof" (Motion Tr. 12). Although Froccaro, Pescatore's attorney, stated that he used his calculator to determine that "the loss amount in the PSR . . . added up to 1.8" (id. at 22), Froccaro also said, "I never agreed to the $1.8

million," (id. at 21), and said he could not give the court a "definite figure" (id. at 6).

The district court thus ruled--properly--that it could not uphold Pescatore's challenge to the accuracy of the PSR based on his vague and conclusory assertions (see, e.g., Motion Tr. 22 ("not on the representations you made here today")).

Our own mathematical review confirms that the relevant victims' losses listed in the Loss Chart appended to the Judgment total $2,559,611.79. Although Pescatore's brief on appeal provides somewhat more enlightenment than was proffered to the district court as to the nature of his claim of arithmetic error, that claim improperly disregards the fact that in many instances his offense with respect to a particular vehicle caused losses to more than one victim. Given Pescatore's failure to proffer any evidence to show that the PSR Loss Chart is inaccurate, we cannot conclude that the amended Judgment's incorporation of the PSR's listing of losses totaling $2,559,611.79 is error, much less "plain" error.

3. Pescatore's Challenge to the $3 Million Requirement

Pescatore's contention that the Judgment is in error to the extent that it orders him to pay more than $2,559,611.79 is also subject to plain-error review and is far more problematic. In the original judgment entered in November 2008, the order that Pescatore pay restitution in the amount of $3 million did not include or incorporate any identification of Pescatore's victims

or determination of each victim's loss. Hence that judgment's order that Pescatore pay restitution did not comply with the MVRA. Pescatore did not appeal to complain of that defect.

More importantly, when the government asked the district court to amend the original judgment by appending the PSR Loss Chart itemizing Pescatore's victims and their losses, which would apparently bring the Judgment into compliance with § 3664(f)(1)(A), Pescatore did not ask the district court to also amend the original $3 million figure so that the restitution ordered would not exceed the $2,559,611.79 in losses listed in the Loss Chart. Nor, after the amended Judgment was filed in January 2009, did Pescatore appeal to complain that the Judgment required him to pay more in restitution than the $2,559,611.79 the government had proven in losses. Rather, he waited until October 2009 to complain of the Judgment, i.e., six months after being notified that the DOJ would not relieve him of his restitution obligation, and nine months after the Judgment was filed. Accordingly, Pescatore's present challenge to the Judgment's order that he pay $3 million in restitution cannot be sustained unless he meets the plain-error test, described in Part II.B.2. above. We conclude that he meets the first three elements of that test, but not the fourth.

Given the government's concession on this appeal that it proved losses totaling only $2,559,611.79, the amended Judgment's retention of the order that Pescatore pay $3 million in restitution was error. And in light of the authorities cited

- 31 -

above, that error is plain. Further, there can be no doubt that, at least at the time the Judgment was amended and itemized only $2,559,611.79 in losses, the error affected Pescatore's substantial rights, for it required him to pay some $440,000 more than the MVRA authorized. But these are just the threshold conditions that, if met, permit us to "exercise [our] discretion to notice a forfeited error . . . only if [] the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson, 520 U.S. at 467 (internal quotation marks omitted) (emphasis added). In the present case, if Pescatore had proceeded to make timely payment of $2,559,611.79, we would, in the interest of justice, recognize that his restitution obligation was satisfied; or if he had timely paid the ordered $3 million, we would conclude that justice entitled him to a refund.

In fact, however, Pescatore, without obtaining a stay of the Judgment, simply flouted it. He moved on December 22, 2009--and renewed his motion on December 31, 2009--for a stay of the Judgment's requirement that he pay on or before December 31, 2009; but the court did not grant a stay. Pescatore nonetheless made no payment at or before that first deadline.

At the January 29, 2010 argument on Pescatore's request to reduce the restitution obligation, the court--despite repeatedly noting that Pescatore "ha[d]n't complied with the order of this court" (Motion Tr. 24), was nearly "30 days overdue" (id. at 20, 23; see, e.g., id. at 24, 25), and "ha[d]n't even produced a

dollar in good faith" (id. at 28)--granted Pescatore a new 30-day period in which to make a restitutionary payment (see id. at 20). That 30-day period ended on March 1, 2010, and nothing in the record suggests that Pescatore made any payment by that date.

After his March 1, 2010 deadline had passed, Pescatore asked this Court to grant him a stay. That motion was promptly denied on March 5. No party has informed us that Pescatore has made any payment yet.

We note also that following this Court's denial of a stay, Pescatore made no effort whatever to expedite this appeal; instead he missed several filing deadlines, two of which resulted in dismissals (followed eventually by reinstatements) of the appeal. As a consequence of the lack of any urgency on Pescatore's part, this appeal was not submitted for decision until January 2011, nearly a year after the denial of his request to modify the restitution order, and more than 10 months after the expiration of the new 30-day period granted him at the January 2010 hearing-- when he was already in noncompliance--to make payment in full.

Although the fact that the government had shown losses totaling only $2,559,611.79 means that the Judgment's order for restitution in the amount of $3 million was in error, it is fundamental law that that error did not give Pescatore the right simply to ignore the court's order. It is a

> basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.

*Maness v. Meyers*, 419 U.S. 449, 458 (1975) (emphasis added).

> [A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued.

*United States v. United Mine Workers of America*, 330 U.S. 258, 293 (1947) (footnote omitted)); *see, e.g.*, *Howat v. Kansas*, 258 U.S. 181, 190 (1922) ("until [the] decision" of a court of competent jurisdiction "is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected"); *SEC v. Charles Plohn & Co.*, 433 F.2d 376, 379 (2d Cir. 1970) ("It is axiomatic that a court order must be obeyed, even assuming its invalidity, until it is properly set aside." (internal quotation marks omitted)).

In light of Pescatore's election to disregard these principles and disobey the Judgment, although we agree that he cannot be compelled to pay more than $2,559,611.79 as pure restitution, we cannot conclude that he has met the final prong of the plain-error test so as to require that he be given immediate relief from the $3 million figure, for a defendant's unexcused failure to comply with a restitution order has monetary (as well as other potential) consequences. *See, e.g.*, 18 U.S.C. §§ 3572 (penalties), 3612 (penalties and interest); 3613 (civil enforcement), 3613A (*inter alia*, modification of supervised release terms; contempt of court), 3614 (resentencing).

The consequences most relevant to this appeal are the accrual of interest and penalties with respect to restitution

payments not made when due. If a restitution payment of more than $2,500 is not made as ordered by the court, "[i]n general[, t]he defendant shall pay interest," 18 U.S.C. § 3612(f)(1). In addition, a "payment of restitution is delinquent if a payment is more than 30 days late," and is "in default if a payment is delinquent for more than 90 days." 18 U.S.C. §§ 3572(h) and (i). The penalties for delinquency and default are substantial:

> If a fine or restitution becomes delinquent, the defendant shall pay, as a penalty, an amount equal to 10 percent of the principal amount that is delinquent. If a fine or restitution becomes in default, the defendant shall pay, as a penalty, an additional amount equal to 15 percent of the principal amount that is in default.

18 U.S.C. § 3612(g) (emphases added); see also id. § 3612(i) ("Payments relating to fines and restitution shall be applied in the following order: (1) to principal; (2) to costs; (3) to interest; and (4) to penalties."). These penalties for default and delinquency are not paid to the defendant's victims, but rather become assets of the United States Treasury. See Administrative Office of the United States Courts, Guide to Judiciary Policy vol. 13, § 810.50.10(a)(2) (Aug. 3, 2010) ("Interest assessed on restitution is paid to the victim. Any penalty assessed on restitution is deposited into Miscellaneous Fines, Penalties, and Forfeitures Fund . . . .").

Assuming that Pescatore has made no restitutionary payments during the pendency of this appeal, he has accumulated obligations of interest on the $2,559,611.79, as well as penalties that are sizeable. Thus, it is not clear that $3 million will

exceed the sum of his victims's losses, the statutory interest to which the victims are entitled because of his delay in making payment, and the statutory penalties that may be applicable on account of that delay. In all the circumstances, although we agree that Pescatore cannot be compelled to pay more than $2,559,611.79 as pure restitution, we cannot conclude that he has met the final prong of the plain-error test in any way that requires that he be given immediate relief from the requirement that he pay $3 million.

We note that Pescatore acknowledged in his plea allocution that his chop shop operation began in 1987 and ended in mid-2004. Thus, his victims have been without compensation for their losses for the better part of a decade, or longer. We conclude that, in light of the choices made by Pescatore throughout this case, including:

- his initial agreement to pay no less than $3 million in restitution,

- his failure to timely object to or appeal from the amended Judgment to challenge its retention of the $3 million restitution obligation despite the amendment identifying victims whose losses totaled only $2,559,611.79,

- his failure to challenge the accuracy of the PSR Loss Chart before sentencing, at sentencing, or upon the government's request that the Loss Chart be made part of the Judgment,

- his unsubstantiated challenges to the accuracy of the Loss Chart, made in conclusory fashion, more than a year late, and without even an offer of proof,

- his tortoise-like pace in pursuing relief, both in the district court and on this appeal, to achieve delays that he had requested and been denied,

- 36 -

▪ his decision, having repeatedly been denied a stay, simply to disobey the Judgment, and

▪ the fact that his failure to make any payments by the court-imposed deadlines will require him to pay interest on, and expose him to the possibility of restitution-related penalties of 10 and 15 percent of, any unpaid portion of $2,559,611.79,

we conclude that the interests of justice, fairness, and the public reputation of judicial proceedings are best served if Pescatore remains required to make the ordered $3 million payment, subject to his right to a refund of any moneys remaining after his victims have been paid restitution, with interest, and after whatever applicable restitution-related penalties have been satisfied.

CONCLUSION

We have considered all of Pescatore's arguments on this appeal and have found in them no basis for reversal. On remand, the district court will determine, inter alia, (a) the dates on which payments toward Pescatore's $3 million obligation are made or are otherwise satisfied by government seizure of his properties, (b) the amounts of interest accruing on any unpaid portion of the principal sum of $2,559,611.79 during Pescatore's periods of noncompliance with court-ordered deadlines, (c) the extent to which the statutory restitution-related penalties on such unpaid principal are applicable, and (d) if the total of

restitution, interest, and restitution-related penalties does not exhaust the $3 million, the amount to be refunded to Pescatore.

The order of the district court (a) denying an order compelling restoration, and (b) denying immediate relief from the $3 million restitution order is affirmed. Pescatore is to make payment of $3 million within 60 days of the issuance of the mandate herein; interest on any unpaid portion of $2,559,611.79 shall not cease to accrue during that period. The matter is remanded to the district court for proceedings not inconsistent with this opinion.

The mandate shall issue forthwith.