# United States Court of Appeals
## For the First Circuit

No. 06-2121

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN A. SACCOCCIA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, John R. Gibson,[*] and Howard,
Circuit Judges.

Mark E. Overland, by appointment of the court, with whom
Overland Borenstein Scheper & Kim LLP was on brief for appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Robert Clark Corrente, United States Attorney, was on brief
for appellee.

April 29, 2009

---

[*]Of the Eighth Circuit, sitting by designation.

**BOUDIN, Circuit Judge**.  Appellant Stephen A. Saccoccia was convicted, along with several co-conspirators, of RICO conspiracy and money laundering crimes related to proceeds derived from illegal drug trafficking.  18 U.S.C. § 1962 (2006).  In addition to a sentence of 660 years in prison and a $15.7 million fine, the district court found that Saccoccia was required to forfeit over $136 million, comprising the proceeds of his criminal activity.  We affirmed.  United States v. Saccoccia, 58 F.3d 754 (1st Cir. 1995); see also United States v. Saccoccia, 42 Fed. Appx. 476 (1st Cir. 2002) (rejecting collateral attacks).

The $136 million was not reachable by federal courts because nearly all of the illegal proceeds had been wired to persons and banks abroad.  United States v. Saccoccia, 62 F. Supp. 2d. 539, 540 (D.R.I. 1999).  Thus, after sentencing, the government moved, pursuant to 18 U.S.C. § 1963(m), to forfeit certain substitute assets valued at approximately $7.7 million, the court did so, and we affirmed.  Saccoccia, 58 F.3d at 783-85.  This appeal involves a second motion by the government to forfeit substitute assets that were already in the government's possession but had not been specifically named in any prior forfeiture order.

In 2006, the government asked the district court to order forfeiture of items valued at approximately $58,000--including precisely identified precious metals, jewelry, foreign stamps and weapons--that had been seized by the FBI in 1991 from addresses

-2-

associated with Saccoccia and his co-defendants at the time of their arrest, but were not included in the original forfeiture order as specific assets to be forfeited. They were arguably subject to forfeiture at the time, either as the immediate proceeds of the crimes or items acquired with such proceeds,[1] but had been apparently been overlooked when the government submitted its proposed judgment in the original criminal trial.

At the time the present motion was filed, the government was still well short of collecting the $136 million figure due under the original judgment. The district court granted the motion, rejecting Saccoccia's argument made pro se that the items were not subject to forfeiture as substitute assets because the items at issue were "tainted," that is, were direct proceeds or acquired from direct proceeds of the crime. This appeal, Saccoccia now having counsel appointed by this court, followed.

On appeal, Saccoccia first argues that, under either the fifth or sixth amendment, he was entitled to appointed counsel in the district court to defend against the government's attempt to forfeit the substitute assets in question. This appears to be an issue of first impression. We now hold that Saccoccia had no constitutional right to appointed counsel in either court, although

---

[1]The government may forfeit as tainted "any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of [18 U.S.C. §] 1962." 18 U.S.C. § 1963(a)(3) (emphasis added) (2006).

-3-

this does not affect our precautionary appointment of counsel to present Saccoccia's argument in this court.

According to Saccoccia, the sixth amendment entitles him to appointed counsel because a substitute asset order imposes additional punishment on a defendant beyond the sentence originally imposed.  If the sixth amendment does not apply, Saccoccia believes that the fifth amendment's due process clause still entitles him to counsel under the facts of this case to "ensure that forfeiture of [his] property occurs only after a reliable determination of the specific factual prerequisites of 18 U.S.C. § 1963(m)."  Neither claim is sound.

A substitute asset proceeding is simply a means of collecting on the original forfeiture judgment.  United States v. Reed, 924 F.2d 1014, 1017 (11th Cir. 1991).  Because such a proceeding does not increase the quantum of punishment imposed on a defendant, no right to appointed counsel exists under the sixth amendment.  Nichols v. United States, 511 U.S. 738, 746-49 (1994).  Even if the punishment were increased, arguably the sixth amendment would still not apply because imprisonment cannot result, Scott v. Illinois, 440 U.S. 367 (1979), but that is an argument we need not reach.

That there is no sixth amendment right to appointed counsel in a substitute asset case is buttressed by decisions recognizing there is no sixth amendment jury trial right in

-4-

criminal forfeiture proceedings generally.  As the Supreme Court recognized, there is not even a constitutional right to a jury trial in an initial forfeiture proceeding.  Libretti v. United States, 516 U.S. 29, 48-49 (1995)[2], and similarly there is no such right in a substitute forfeiture proceeding.  United States v. Hurley, 63 F.3d 1, 23 (1st Cir. 1995).

The fifth amendment's due process clause also does not entitle Saccoccia to appointed counsel.  Saccoccia argues that he has a constitutionally protected interest in the ownership of property and that the deprivation of that property interest without counsel amounts to a violation of the due process clause.  Even if the premise were sound--which it may not be to the extent that the property in question amounts to criminal proceeds and so was already forfeited--the conclusion would not follow.

An individual's property can be in jeopardy in many kinds of proceedings to which the government is a party; examples are eminent domain proceedings, suits by the government to collect taxes, disputes with the government over ownership of land, and suits in which an individual sues the government for patent violations.  The individual in such cases is free to be represented

_____

[2]A jury may still get to decide forfeiture because "[i]f the indictment or the information alleges that an interest or property is subject to criminal forfeiture a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any."  Fed. R. Crim. P. 31(e).

by counsel but has no constitutional right to counsel at the expense of the government.

Even in criminal cases, the Constitution does not by its terms provide for appointed counsel. That right has been interpolated, rather late in our history, because of the value placed on personal liberty and the concern that a lay defendant cannot adequately protect himself in complex criminal proceedings without the aid of counsel. But the Supreme Court's emphasis has always been upon the threat of incarceration, cf. In re Winship, 397 U.S. 358, 366 (1970); and even there, it has been hesitant to create an automatic right outside of the original prosecution.[3]

In a second and separate argument, Saccoccia argues that because the property in question could have been forfeited under 18 U.S.C. § 1963(a) as property tainted by the RICO offense, it may not be forfeited as substitute property under section 1963(m). Section 1963(m) allows inter alia for the forfeiture of substitute assets whenever any property obtained from RICO violations cannot be forfeited by the government because of any act or omission of the defendant.

Here, most of the original proceeds were apparently stored abroad and Saccoccia does not dispute that the government is

_____

[3]Appointed counsel is not a constitutional right in habeas proceedings, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), and even in parole revocation, the Supreme Court has said that the right is not automatic. Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973).

entitled to seek otherwise qualified substitute assets. By the terms of section 1963(m), "any other property" of the defendant may be forfeited in place of the originally forfeited property. We think that it makes no difference that this property could perhaps have been forfeited in the initial forfeiture as comprising or derived from the proceeds of the illegal activity. Because it was not forfeited, and there is still an unfulfilled judgment against Saccoccia, this property may be forfeited in substitution, if it belongs to Saccoccia rather than another claimant.

As a matter of statutory language alone, Saccoccia's position is not impossible. The statute proves that if "the property described in subsection (a)" cannot (for various listed reasons) be reached by the government, then the court shall order the forfeiture "of any other property of the defendant" up the value due to the government. 18 U.S.C. § 1963(m). "Other" could be read to exclude categorically tainted property that was not previously forfeited but could have been forfeited at the criminal trial as proceeds of the crime or derived from such proceeds.

But such a reading is not linguistically required: the juxtaposition of subsections (a) and (m) is meant, in relation to substitute assets, to distinguish between tainted property already forfeited by a court and reached by the government and other property of the defendant that is still available to cover the amount yet unpaid because some of the forfeited property is not

reachable. Whether the now available property is tainted or innocent could hardly have mattered to Congress, which wanted the deficiency paid; it would be especially ironic to exclude from subsection (m) property tainted but not yet forfeited.

Saccoccia relies on United States v. Bornfield, 145 F.3d 1123 (10th Cir. 1998), which does say broadly that "[a]n asset cannot logically be both forfeitable and a substitute asset." Id. at 1139. In Bornfield, the circuit court held invalid the jury's finding that certain assets in question were forfeitable as proceeds of the offense. The quoted passage was used in rejecting the district court's alternative holding that even if the jury had erred in finding the assets forfeited as proceeds, they could be forfeited as substitute assets.

Whether or not the Tenth Circuit's result was right, the quoted statement was made in a different context than the one we face. True, logically an asset cannot both be "proceeds initially subject to forfeiture" and "not proceeds initially subject to forfeiture" since one proposition is the negative of the other; but in our view assets in either category can be used as substitute assets: in other words, as here, property that the government could earlier (but did not) have forfeited and seized as tainted can instead be reached later as substitute assets.

Saccoccia's citation to United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996) is even less helpful to him. There, the court

held only that commingled funds (that is a bank account containing both legal and illegal proceeds) could not be forfeited under the initial forfeiture procedure and had to be forfeited as substitute assets.  Id. at 1088.  If anything, this bears out our judgment that assets that could have been forfeited directly (i.e., separately identifiable illegal proceeds) can later be treated instead as substitute assets.

Saccoccia's final argument is that the sixth amendment as interpreted by the Supreme Court in United States v. Booker, 543 U.S. 220 (2005), and its progeny require the factual predicates for a substitute asset forfeiture be found by a jury and not by a court.  This is not so.  The Supreme Court has held that there is no such constitutional right even in initial criminal forfeiture proceedings, Libretti, 516 U.S. at 49, and we are bound by that holding.  E.g., United States v. Ortiz-Cintron, 461 F.3d 78, 82 (1st Cir. 2006).[4]

Further, it seems unlikely that Booker will lead the Supreme Court to reconsider Libretti.  Booker's primary concern was with imprisonment being set or expanded, under mandatory guidelines, based on conduct of the defendant that the jury had never considered.  To the extent that seizure of substitute assets

---

[4] Accord United States v. Huber, 462 F.3d 945, 948-49 (8th Cir. 2006); United States v. Leahy, 438 F.3d 328, 331-39 (3d Cir. 2006) (en banc); United States v. Fruchter, 411 F.3d 377, 379-83 (2d Cir. 2005); United States v. Tedder, 403 F.3d 836, 840-41 (7th Cir. 2005).

is merely a collection mechanism for amounts already found to be due to the government, <u>Booker</u>'s concern is not remotely implicated.

<u>Affirmed</u>.