23-6297-cr
*United States v. Romeo*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2024

(Argued:  April 2, 2025   Decided: May 5, 2025)

No. 23-6297-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

ROCCO ROMEO,

*Defendant-Appellant.*

_____

Before:          SACK, BIANCO, and MERRIAM, *Circuit Judges.*

Defendant-Appellant Rocco Romeo appeals from an order denying his motion to enjoin the forfeiture of a substitute asset to satisfy Romeo's outstanding forfeiture money judgment, entered on March 27, 2023, in the Southern District of New York (Vincent L. Briccetti, *Judge*), following his conviction for wire fraud, in violation of 18 U.S.C. § 1343, and money laundering, in violation of 18 U.S.C §§ 1956(a)(1)(A)(i), (B)(i).  On appeal, Romeo argues that he had the right to counsel during the substitute-asset forfeiture proceeding—in which Romeo

represented himself—and the district court's failure to appoint counsel for him violated the Sixth Amendment. He further argues that the district court erred by failing to subject the substitute asset at issue here—namely, $524,657.49 in proceeds from the sale of his membership interest in Atlas Certified, LLC—to the 25% garnishment limitation enumerated in the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* ("CCPA"). He also contends that a remand is warranted for the government to consider whether to use its discretionary authority to apply the forfeited substitute asset to his restitution obligation or, in the alternative, for the district court to consider whether to use its own authority to direct the government to prioritize satisfying the restitution obligation over forfeiture.

We first hold that Romeo had no Sixth Amendment right to counsel in the post-judgment, substitute-asset forfeiture proceeding. We further conclude that the substitute asset did not qualify for any garnishment limitations because it does not constitute "earnings" under the CCPA. We also hold that no remand is necessary to allow the government to consider its discretionary authority to apply the forfeited asset to the restitution obligation and, even assuming *arguendo* the district court has the authority to order such prioritization, the district court did not commit plain error in failing to do so.

Accordingly, we **AFFIRM** the order of the district court.

FOR APPELLEE: MATHEW ANDREWS, Assistant United States Attorney (James Ligtenberg, Assistant United States Attorney, *on the brief*), *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT: ROBERT A. CULP, The Law Office of Robert A. Culp, Garrison, New York.

PER CURIAM:

Defendant-Appellant Rocco Romeo appeals from an order denying his motion to enjoin the forfeiture of a substitute asset to satisfy Romeo's outstanding forfeiture money judgment, entered on March 27, 2023, in the Southern District of New York (Vincent L. Briccetti, *Judge*), following his conviction for wire fraud, in violation of 18 U.S.C. § 1343, and money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (B)(i). On appeal, Romeo argues that he should have had counsel appointed to assist him in the substitute-asset forfeiture proceeding—in which Romeo represented himself—and the district court's failure to appoint him counsel violated the Sixth Amendment. He further argues that the district court erred by failing to subject the substitute asset at issue here—namely, $524,657.49 in proceeds from the sale of his membership interest in Atlas Certified, LLC—to the 25% garnishment limitation enumerated in the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* ("CCPA"). He also contends that a remand is warranted for the government to consider whether to use its discretionary authority to apply the forfeited substitute asset to his restitution obligation or, in the alternative, for the district court to consider whether to use its own authority

3

to direct the government to prioritize satisfying the restitution obligation over forfeiture.

We first hold that Romeo had no Sixth Amendment right to counsel in the post-judgment, substitute-asset forfeiture proceeding. We further conclude that the substitute asset did not qualify for any garnishment limitations because it does not constitute "earnings" under the CCPA. We also hold that no remand is necessary to allow the government to consider its discretionary authority to apply the forfeited asset to the restitution obligation and, even assuming *arguendo* that the district court has the authority to order such prioritization, the district court did not commit plain error in failing to do so.

Accordingly, we **AFFIRM** the order of the district court.

**BACKGROUND**

This case arises out of a scheme in which Romeo defrauded his employer, a New Jersey law firm. In particular, Romeo created a fake shell company, which he used to bill the firm for unrendered information technology ("IT") services. Romeo, as head of the firm's IT department, paid the fraudulent bills using his employer's funds, transferred those funds to bank accounts he controlled, and used them to pay for personal expenses.

4

On July 31, 2020, Romeo pled guilty, pursuant to a plea agreement, to a superseding information charging him with one count of wire fraud, in violation of 18 U.S.C. § 1343 ("Count One"), and one count of money laundering, in violation of 18 U.S.C §§ 1956(a)(1)(A)(i), (B)(i) ("Count Two").  The superseding information contained a forfeiture allegation, under which Romeo could be required to forfeit assets traceable to the charged offenses, and a substitute-asset provision, which stated that, should assets traceable to the offenses not be identifiable or obtainable, the government would "seek forfeiture of any other property of the defendant up to the value of the [] forfeitable property," under 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c).  App'x at 17.  In accordance with his plea agreement with the government, Romeo agreed to separate orders of restitution and forfeiture in equal amounts of $855,629.76.  Romeo further stipulated in his plea agreement that "any forfeiture of [his] assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture."  *Id.* at 31.  At the guilty plea proceeding, Romeo confirmed that he was admitting to the forfeiture allegation in the superseding information and agreeing to forfeit $855,629.76 to the United States.  Romeo also confirmed his understanding that the district court could order restitution in the same amount.

5

On February 4, 2021, the district court sentenced Romeo to a term of 24 months' imprisonment, followed by a term of three years' supervised release. Consistent with the plea agreement, the district court also ordered that Romeo pay $855,629.76 in restitution and the same amount in forfeiture. In imposing the sentence, the district court chose not to assess any fines because, among other reasons, it thought that "Mr. Romeo should use whatever money he has to pay restitution to the victim in this case. It should go to the victim. It shouldn't go to the government." App'x at 77.

Shortly thereafter, on February 10, 2021, Romeo and his counsel signed, and thereby consented to, a preliminary order of forfeiture and money judgment in the amount of $855,629.76, in which Romeo "admit[ted] that, as a result of [his] acts and/or omissions . . . , the proceeds traceable to the offense charged in Count One of the Information that [he] personally obtained and property involved in Count Two of the Information cannot be located upon the exercise of due diligence." App'x at 92. Romeo further agreed that "[p]ursuant to Title 21, United States Code, Section 853(p), the United States is authorized to seek forfeiture of substitute assets of the Defendant up to the uncollected amount of the Money Judgment."

App'x at 93. On February 12, 2021, the district court entered that order and judgment. App'x at 94.

In November 2022, because it had not identified any assets traceable to Romeo's offenses, the government requested that the district court enter a preliminary substitute-asset forfeiture order, authorizing the forfeiture of $524,657.49 held by Atlas Certified, LLC ("Atlas" or the "Company"), a North Carolina limited liability company. That money (hereinafter, the "Substitute Asset") represented Romeo's proceeds from the sale of his membership interest in the Company. On December 2, 2022, the district court granted the government's request and entered a preliminary forfeiture order, authorizing the government to seize the Substitute Asset.

Romeo, proceeding *pro se*, then filed a motion seeking to enjoin the government from enforcing the forfeiture of the Substitute Asset, arguing, *inter alia*, that: (1) the Substitute Asset is not forfeitable because it was not involved in the offense conduct; (2) Romeo was ordered to forfeit only 20% of his post-conviction income, not all future assets; (3) he was not provided notice of the government's request to seek the forfeiture of substitute assets; and (4) such forfeiture is barred by the Excessive Fines Clause of the Eighth Amendment. The

7

district court denied the motion. *See generally United States v. Romeo*, No. 7:19-cr-00586 (VB), 2023 WL 2648191 (S.D.N.Y. Mar. 27, 2023). This appeal followed.[1]

## DISCUSSION

On appeal, Romeo, now represented by counsel, argues that the district court erred by denying his motion to enjoin the forfeiture of the Substitute Asset, and that the case should be remanded for further proceedings because: (1) Romeo should have been represented by counsel during the substitute-asset forfeiture proceeding; (2) the government is not entitled to forfeiture of the entirety of the $524,629.76 Romeo received from the sale of his membership interest in Atlas because the Substitute Asset should be considered wages or income protected by the garnishment limitations enumerated in the CCPA, 15 U.S.C. § 1673(a); (3) the government should have used its discretionary authority, pursuant to 18 U.S.C. § 981(e)(6), 21 U.S.C. § 853(i)(1), and Department of Justice policy statements, to apply the Substitute Asset towards restitution, not forfeiture; and (4) the district court should have used its authority to direct the government to prioritize satisfying restitution over forfeiture, if the government failed to do so voluntarily.

---

[1] On July 10, 2023, approximately three months after Romeo filed his notice of appeal, the government requested that the district court enter a final forfeiture order. In light of the pending appeal, and without objection from the government, the district court deferred ruling pending the resolution of this appeal.

8

"We review a district court's legal determinations regarding forfeiture *de novo* and its underlying factual findings for clear error." *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015). Because Romeo raises all of his arguments for the first time on appeal, we review them for plain error. *See United States v. Mendonca*, 88 F.4th 144, 152 (2d Cir. 2023). For there to be plain error, a defendant must demonstrate: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant]'s substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020) (internal quotation marks and citation omitted).

We first provide a brief overview of the legal framework for forfeiture of substitute assets and then address each of Romeo's arguments in turn.

## I. Legal Framework for Forfeiture of Substitute Assets

Title 18, United States Code, Section 981(a)(1)(C) provides for forfeiture to the United States of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" certain enumerated offenses, including wire fraud and money laundering. 18 U.S.C. § 981(a)(1)(C) (providing for forfeiture of proceeds traceable to "specified unlawful activity," as defined in

9

18 U.S.C. § 1956(c)(7)); *see id.* § 1956(c)(7)(A) (defining "specified unlawful activity" to include the offenses listed in 18 U.S.C. § 1961(1)); *id.* § 1961(1) (listing acts relating to wire fraud under 18 U.S.C. § 1343 and laundering of monetary instruments under 18 U.S.C. § 1956). Although Section 981(a)(1)(C) is a civil forfeiture provision, it is made applicable to criminal cases pursuant to 28 U.S.C. § 2461(c). *See United States v. Contorinis*, 692 F.3d 136, 145 n.2 (2d Cir. 2012). Under Section 2461(c), the procedures set forth in 21 U.S.C. § 853, including the forfeiture of substitute-assets procedures enumerated in 21 U.S.C. § 853(p), apply to criminal forfeiture proceedings. *See United States v. Stevenson*, 834 F.3d 80, 85 n.2 (2d Cir. 2016); *see also United States v. Capoccia*, 402 F. App'x 639, 641 (2d Cir. 2010) (summary order) ("[W]e see no reason why this reference [to the procedures of 21 U.S.C. § 853 in 28 U.S.C. § 2461(c)] should not also include the forfeiture of substitute assets.").

Under Section 853(p), if "as a result of any act or omission of the defendant," any property subject to forfeiture "(A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which

10

cannot be divided without difficulty[,] . . . the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E)" set forth above.  21 U.S.C. § 853(p)(1)–(2). Moreover, Federal Rule of Criminal Procedure 32.2(e)(1) further provides that "[o]n the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is substitute property that qualifies for forfeiture under an applicable statute."

## II.     Right to Counsel in Substitute-Asset Forfeiture Proceedings

Romeo argues that he should have been represented by counsel during the substitute-asset forfeiture proceeding because, in the absence of counsel, "critical facts and legal authorities were missed," Appellant's Br. at 13, and, thus, the court could not "examine the issues and rule appropriately," *id.* at 22.  We disagree.

"[T]he Sixth Amendment protects a criminal defendant's right to the assistance of counsel 'at all critical stages of the criminal process.'" *United States v. Kerr*, 752 F.3d 206, 220 (2d Cir. 2014) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) (internal quotation marks and citation omitted)).  The Supreme Court has defined critical stages of the criminal process as "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from

11

the accused's rights to a fair trial," that is, "at such critical confrontations, as at the trial itself," where the presence of counsel "operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution." *United States v. Wade*, 388 U.S. 218, 226, 227 (1967); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 238–39 (1973) (explaining that the Sixth Amendment right to counsel is "designed to protect the fairness of the trial itself"). Of course, those critical stages also include certain post-trial proceedings, such as sentencing, where a defendant's "substantial rights" are affected. *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).

We hold that there is generally no Sixth Amendment right to counsel for a post-judgment, substitute-asset forfeiture proceeding. By its terms, a substitute-asset forfeiture proceeding is just that—a hearing to substitute an asset to satisfy a forfeiture judgment *that the court has already imposed*. Such a proceeding, and the substitute-asset forfeiture order that may issue as a result, does not increase the punishment or penalty imposed on a defendant. *Cf. Nichols v. United States*, 511 U.S. 738, 746–48 (1994) (holding that a misdemeanor conviction for which the defendant was unrepresented may be considered in a subsequent criminal proceeding for sentencing enhancement purposes because enhancement statutes

12

"do not change the penalty imposed for the earlier conviction"); *see also United States v. Alamoudi*, 452 F.3d 310, 315 (4th Cir. 2006) (holding that a substitute-asset forfeiture order does not "increase the punishment" or "the penalty at all"). Indeed, a substitute-asset forfeiture order does no more than authorize the government to enforce an existing order of forfeiture; it does not increase the punishment already imposed. *Cf. United States v. Cohan*, 798 F.3d 84, 89 (2d Cir. 2015) (explaining that "a writ of garnishment seeks to enforce an already existing order of restitution" and "does not implicate the imposition of restitution"). Therefore, such a proceeding is generally not a "critical stage" of a criminal process as it does not affect the defendant's substantial rights.

Our conclusion that a defendant is generally not entitled to counsel during this post-judgment, forfeiture proceeding is consistent with the conclusion of the only other circuit to address this issue. In *United States v. Saccoccia*, 564 F.3d 502 (1st Cir. 2009), the First Circuit determined that the defendant was not entitled to counsel under the Sixth Amendment during a substitute-asset forfeiture proceeding because "such a proceeding does not increase the quantum of punishment imposed on a defendant." *Id.* at 505 (citing *Nichols*, 511 U.S. at 746–49).

13

Applying those principles here, we conclude that the district court did not err by allowing Romeo to proceed *pro se* during his substitute-asset forfeiture proceeding. Prior to this post-judgment proceeding, Romeo was represented by counsel throughout his criminal case, including when he entered into his plea agreement and consented to the preliminary order of forfeiture and money judgment after sentencing. Moreover, while he was still represented by counsel, Romeo was on notice that the government could pursue a forfeiture of a substitute asset should it fail to identify assets traceable to Romeo's offense conduct. The superseding information includes a substitute-asset provision, and both Romeo and his counsel signed a forfeiture order shortly after sentencing that expressly acknowledged that the government was "authorized to seek forfeiture of substitute assets of [Romeo] up to the uncollected amount of [$855,629.79]." App'x at 93. Moreover, because the government's request to forfeit the Substitute Asset (in the amount of $524,657.49) does not exceed—indeed, it is less than—the amount of forfeiture included in his sentence, the substitute-asset forfeiture order does not impose any additional punishment on Romeo.

Given that Romeo was on notice, and in fact agreed, with the advice of counsel, that the government was authorized, in certain circumstances, to seek

14

forfeiture of substitute assets, and because the forfeiture order imposed no additional punishment on Romeo after his sentencing, the Sixth Amendment did not guarantee Romeo a right to counsel during this post-judgment, substitute-asset forfeiture proceeding. [2] *Cf. United States v. Kon Yu-Leung*, 910 F.2d 33, 39–40 (2d Cir. 1990) (holding that the right to counsel had not attached when the defendant consented to a search post-indictment because it was uncontested that the government would have obtained a warrant without that consent and thus, "it [was] difficult to ascertain what benefit would have accrued to [the defendant], or what detriment he might have avoided, if counsel had been available to him at that juncture").

## III. Garnishment

Romeo next argues that the district court erred in allowing the government to seize the entire Substitute Asset—that is, all of the $524,657.49 he received for the sale of his membership interest in Atlas. In particular, he argues that the Substitute Asset qualified for the 25% limitation on garnishment provided for by

---

[2] Although we conclude that Romeo had no right to counsel in the post-judgment, substitute-asset forfeiture proceeding, we note that it would be helpful, especially due to the complicated legal issues that sometimes arise in post-judgment forfeiture proceedings, for district courts to ensure that defendants are aware that they have the right to retain counsel to challenge any government actions in such proceedings.

Section 1673(a) of the CCPA because it should be considered wages or income. We find this argument unavailing and conclude that the district court did not err in ordering forfeiture of the entire Substitute Asset.

To be sure, for certain types of assets, the CCPA limits the amount the government can garnish to satisfy forfeiture orders. The CCPA restricts the government's garnishment – as it does any garnishment intended to collect on any other sort of debt – to a maximum of 25% of a defendant's weekly "disposable earnings." 15 U.S.C. § 1673(a). The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a); *see id.* § 1672(b) (defining "disposable earnings" as earnings after the deduction of legally required withholdings). However, as the Supreme Court has explained, earnings under the CCPA "[do] not pertain to every asset that is traceable in some way to such compensation," but instead include compensation that represents "periodic payments . . . needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (holding that a tax refund does not constitute earnings for purposes of the CCPA in the

16

context of a bankruptcy proceeding); *see also United States v. Belfort*, 340 F. Supp. 3d 265, 269–70 (E.D.N.Y. 2018) (concluding that the CCPA's garnishment cap did not apply to a defendant's membership interest in a limited liability company).

Here, the record makes clear that the Substitute Asset Romeo received in exchange for his membership interest in Atlas does not qualify as earnings under the CCPA. Indeed, documents related to Atlas's sale state that the Substitute Asset was no more than a one-time, lump-sum payment representing his "pro-rata share of the proceeds of sale based on [his] membership interest" in the Company based on Romeo's "status as a Class C member of Atlas." App'x at 130. Moreover, tax documents related to the sale indicate that Romeo's share was primarily taxed as capital gains, not as income. *See* App'x at 180, 182. In short, the Substitute Asset, which represents the proceeds of the sale of Romeo's equity interest in Atlas, does not qualify as "compensation paid or payable for personal services" under 15 U.S.C. § 1672(a), or as a periodic pension payment, and it therefore is not subject to the garnishment limitations enumerated in the CCPA. *See Kokoszka*, 417 U.S. at 651; *cf. United States v. Ashcraft*, 732 F.3d 860, 864 (8th Cir. 2013) (holding that disability payments are "earnings" under the CCPA because the defendant

regularly received such payments through her employer as a substitute for wages or a salary).

Romeo nevertheless argues that these assets should be considered income or wages because he received the membership interest in exchange for providing Atlas with IT services. This contention, however, is unpersuasive. As *Kokoszka* makes clear, not every asset that is "traceable" to some form of "earnings" qualifies for protection under the CCPA. *See* 417 U.S. at 651. Thus, although Romeo considers the Substitute Asset "income" because he acquired it as a result of the IT work he once provided to Atlas, we conclude that the Substitute Asset represented a liquidation of Romeo's membership share in Atlas and was not directly tied to any professional services he rendered. As such, the Substitute Asset did not constitute a payment for personal services that qualifies as "earnings" under the CCPA. *Id.*

Accordingly, the district court did not err in ordering the forfeiture of all of Romeo's proceeds from the Atlas sale.

## IV. Prioritization of Restitution over Forfeiture

Finally, Romeo argues that remand is warranted because both the government and the district court should have prioritized the satisfaction of his

restitution obligation over his forfeiture obligation. Specifically, Romeo contends that the government should have invoked its ability to apply the Substitute Asset toward his restitution obligation. He alternatively asserts that, if the government did not voluntarily do so, the district court should have "implemented this prioritization," in light of its statement at sentencing, in the context of declining to impose a fine, that "Romeo should use whatever money he has to pay restitution to the victim in this case." Appellant's Br. at 21 (quoting App'x at 77). We discern no basis for a remand on either of these grounds.

With respect to his argument regarding the government's prioritization of forfeiture over restitution, Romeo concedes that, despite his requested relief, it is within the discretion of the Attorney General to make such a decision. *See* Appellant's Br. at 19–20; *see* 18 U.S.C. § 981(e)(6) ("[T]he Attorney General . . . is authorized to retain property forfeited pursuant to this section, or to transfer such property on such terms and conditions as [s]he may determine . . . as restoration to any victim of the offense giving rise to the forfeiture."); 21 U.S.C. § 853(i)(1) ("[T]he Attorney General is authorized to . . . restore forfeited property to victims."); *see also United States v. Pescatore*, 637 F.3d 128, 137 (2d Cir. 2011) (explaining that the decision to apply forfeited property to restitution is a "matter

19

of discretion" and that the "Attorney General is allowed to choose" between restoring the property to the victim or retaining it).

Nevertheless, Romeo argues that *Pescatore* permits this Court to review the Attorney General's decision not to exercise its discretionary authority to apply forfeited assets to restitution "where the government fails to consider that the defendant is unable to pay restitution, making any decision by the government to retain forfeited assets[] highly questionable." Appellant's Br. at 20 (citing *Pescatore*, 637 F.3d at 138). Romeo further contends that the situation contemplated by *Pescatore* is present here because he "has made [it] quite clear that he lacks resources to pay restitution; he cannot even pay the taxes he owes on the money that was forfeited." *Id.*

Even assuming *arguendo* that Romeo is correct in asserting that his case presents circumstances that would make it appropriate for the Attorney General to exercise her discretion to apply Romeo's forfeited assets to restitution, *Pescatore* made clear that, absent authority to the contrary, the Attorney General is not "required" to do so. *Pescatore*, 637 F.3d at 138 ("[W]e see nothing in the statutory provisions, DOJ's normal operating procedures, or the Plea Agreement that required the Department to use the forfeited assets to relieve [the defendant] of his

restitution obligations."). Here, Romeo has failed to identify any authority that requires the Attorney General to apply the Substitute Asset to his restitution, and we are aware of none. *See United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) ("[F]or an error to be plain, it must, at a minimum, be clear under current law, which means that we typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." (alteration adopted) (internal quotation marks and citation omitted)). Accordingly, Romeo has not demonstrated that remand is warranted to allow the Attorney General to invoke her discretionary authority to apply the forfeited asset to restitution.

Romeo alternatively suggests that, separate from the Attorney General's discretion, remand is necessary to allow the district court to use its own discretion to direct the government to prioritize restitution over forfeiture, especially given the district court's expressed view at sentencing that restitution should receive the highest priority. Again, we see no plain error. First, we note that the district court emphasized its preference that Romeo satisfy his restitution obligation in the context of explaining why it declined to impose a fine, not in the context of imposing the forfeiture penalty. Second, although Romeo cites two district court

21

decisions suggesting that a district court has the authority to order the government to apply forfeited assets toward restitution obligations, we have never decided that issue, and many of our sister circuit courts have found that no such authority exists. *See, e.g., United States v. Joseph*, 743 F.3d 1350, 1354–55 (11th Cir. 2014) (per curiam) (collecting cases) ("In light of the statutory framework governing restitution and forfeiture, we hold that a district court generally has no authority to offset a defendant's restitution obligation by the value of forfeited property held by the government, which is consistent with the approach taken by the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits."). However, we need not decide this issue here because, as the government correctly notes, even assuming *arguendo* that a district court has authority to order that forfeited funds be credited to restitution, there is no case authority to suggest (nor does Romeo even contend) that the district court was obligated to do so. We therefore agree with the government that Romeo cannot satisfy his burden to demonstrate plain error on this issue.

## CONCLUSION

We have considered Romeo's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, we **AFFIRM** the order of the district court.